UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTONIO CORTEZ BUCKLEY,

            Plaintiff,

    vs.

M. S. EVANS, *et al.,*

            Defendants.

No. 2:02-cv-01451-JKS

ORDER

## INTRODUCTION

Antonio Cortez Buckley, proceeding *in propria persona,* sues a number of employees of the California State Department of Corrections alleging violations of his civil rights. Buckley relies upon 42 U.S.C. § 1983. This Court has jurisdiction. 28 U.S.C. §§ 1331, 1343. Venue in Sacramento is proper. Buckley has exhausted his state remedies (42 U.S.C. § 1997e(a)) and this action is timely. CAL. CIV. PROC. CODE § 340 (3)[1]

Many of the issues frequently encountered in prisoner right's litigation are addressed in a thoughtful opinion by the Honorable Thelton E. Henderson, in *Madrid v. Gomez*, 889 F.Supp. 1146 ( N.D. Cal. 1995). The Court considered this case as it prepared to try the instant case.

---

[1] There is no federal statute of limitations governing actions pursuant to 42 U.S.C. § 1983. Federal Courts therefore look to the law of the state in which the district court sits and adopts the statute of limitations governing personal injury claims in that jurisdiction. *See, e.g., Fink v. Shedler,* 192 F.3d 911 (9th Cir. 1999). Federal law determines when an action accrues i.e. when the statute begins to run, but federal courts generally look to state law to determine tolling. In 2001 the applicable California statute provided a one-year statute of limitations for personal injury lawsuits. *See* former CAL. CIV. PROC. CODE § 340(3). This one year period was tolled for a period not to exceed two years where the plaintiff was imprisoned. *See* CAL. CIV. PROC. CODE § 352.1(a). In effect, a prisoner had three years from the time his action accrued to bring suit. The statute of limitations was extended effective January 1, 2003, to two years. *See* current CAL. CIV. PROC. CODE § 335.1. The new statute applies to actions not already time barred by former § 340(3) on the effective date of new § 335.1. *See Andonagui v. May Dept. Stores Co.*, 128 Cal. App. 4th 435, 27 Cal. Rptr. 3d 145 (2005). A California prisoner now has four years to bring a personal injury law suit pursuant to 42 U.S.C. § 1983.

THE PRE-TRIAL ORDER

Federal Rule of Civil Procedure 16 provides for the pre-trial preparation of a case for trial and contemplates an ultimate pre-trial conference in which the case will be reviewed and a determination made regarding what issues will be tried.  Following such a conference, a pre-trial order is issued which supercedes the pleadings and controls "the subsequent course of the action."  On December 4, 2006, the Honorable Kim Mueller, U.S. Magistrate Judge, issued a pre-trial order in this case. Docket No. 86.  The order provided that any objections must be filed within fifteen (15) days.  Both parties filed objections which were ruled upon in an order dated January 31, 2007, at Docket No. 92.  Federal Rule of Civil Procedure 16 (e) provides in relevant part that the order issued after the pre-trial conference ". . . shall control the subsequent course of the action unless modified by a subsequent order.  The order following a final pre-trial conference shall be modified only to prevent manifest injustice."[2/]  Rule 16 modifies in part Rule 54(b), which permits reconsideration of interlocutory orders at any time until a final judgment is entered.

The pre-trial order, modified to reflect Judge Mueller's rulings on the parties' objections, identifies the disputed and undisputed material facts and the facts identified by Judge Mueller are the facts set out in the preliminary jury instructions, Instruction No. 2.  Based upon those

---

[2/] Under the Federal Rules of Civil Procedure a case is expected to proceed in stages.  The first stage is the pleading stage.  The second stage is the discovery stage.  The third stage is the dispositive motion stage.  The fourth stage is the trial stage.  The fifth stage is the post trial stage and the sixth stage is the appeal.  The rules downgrade the importance of the pleading stage compared to former law, requiring only a short plain statement of claims and defenses.  Motions to dismiss on the pleadings and for judgment on the pleadings (Rule 12) are disfavored.  The emphasis is on discovery leading to summary judgment where appropriate and, if not, to a final pre-trial conference.  Where a motion for summary judgment is made and denied, the court is directed to review the record and identify those issues of material fact which are undisputed and those that are disputed.  *See* Rule 56(d).  Identification of the disputed issues of material fact prepare the case for use of a special verdict which will focus the jury's attention on only those facts which are in dispute.  *See* Rule 49(a).  Where no dispositive motion is filed the court will, normally, use the pre-trial submissions leading to the pre-trial order supplemented by inquiry of the parties as a means of determining which material facts are truly disputed in order to formulate the jury instructions and the special verdict form.

disputed and undisputed facts the Court defined five claims in the preliminary instructions: 1) The claim that two correctional officers used excessive force to "extract Buckley" from his cell in violation of the Eighth Amendment made applicable to the states by the Fourteenth Amendment;   2) The claim that one or more correctional officers separately violated Buckley's rights under the Eighth Amendment by placing him in an unsanitary cell under conditions creating a known risk that he would suffer severe health problems; 3) That other correctional officers, sitting in review of the decision to house Buckley in the unsanitary cell, rejected his objections and returned him to the cell where he remained for a total of forty days; 4) that certain named correctional officers confiscated "religious" mail belonging to Buckley in violation of his right to religious freedom guaranteed by the First Amendment to the United States Constitution made applicable to the states by the Fourteenth Amendment; and 5) on a separate occasion, different correctional officers confiscated papers of Buckley's which included a religious book while Buckley was in the "yard" exercising.  Buckley contends that these papers had religious significance and constituted a violation of his First Amendment rights.  All of these events occurred in 2001.

The Court continues to be of the view that this description of the case conforms to the pre-trial order as amended.  On the first day of trial there seemed to be some confusion regarding the issues to be tried, and so this order attempts, without violating the admonition of Rule 16 to only modify the pre-trial order to prevent manifest injustice, to sort through the confusion.  In context, the rule's reference to only changing the pre-trial order to avoid manifest injustice reflects the doctrine of the "law of the case" which holds that once legal rulings are made in a case they should not be changed by the same or a successor judge unless 1) there is an intervening change in the facts; 2) there is an intervening change in the law; or 3) the original ruling was made in violation of controlling law at the time it was made, *see*, *School District No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) *but see Hydrick v. Hunter*, ___F.3d___, 2007 WL 2445998 (9th Cir. August 30, 2007) (law of the case doctrine

only applies to questions actually considered and previously decided).[3/]  No motion was made to modify the pre-trial order.  Had one been made, Buckley would have borne the burden of proving that amendment was necessary to prevent "manifest injustice."  *See* FED. R. CIV. P. 16(e). *Galdamez v. Potter*, 415 F.3d 1015, 1020-21 (9th Cir. 2005).[4/]

A final pre-trial order is never entered until the pleadings are complete and discovery has closed.  Thus it will be rare that an intervening change in the facts would justify modification of such an order.  An exception occurs when a party obtains leave to file an amended or supplemental pleading introducing new issues requiring reevaluation of the facts.  No motions to amend or supplement pleadings were filed after the pre-trial order was issued.[5/]

No intervening or supervening case law has been brought to the Court's attention.  The Court therefore sees no basis to modify the pre-trial order or change the identification of issues in the preliminary instructions.

---

[3/] The law of the case does not deprive the court of discretion to modify earlier orders including pre-trial orders.  Nevertheless, no progress in moving a case to trial could be accomplished if the court was constantly called upon to revisit its earlier rulings.  *See United States v. First National Bank of Circle*, 652 F.2d 882, 886-88 (9th Cir. 1981) (chaos would result if successor judges did not ratify earlier rulings in the absence of good cause to modify them).  The prudential considerations underlying the "law of the case" doctrine  identified in the text provide assurance that due process will be preserved without sacrificing finality and progress in a case as it moves to trial or other disposition.  Caution in applying these rules is particularly important where a party is given an opportunity to object to the pre-trial order and seeks to modify the pre-trial order on grounds not mentioned in his earlier objections during the trial.

[4/] In such a case the appellate court counsels that the trial court should consider four factors: 1) the degree of prejudice or surprise to the defendants if the order is modified; 2) the ability of the defendants to cure the prejudice; 3) any impact of modification on the orderly and efficient conduct of trial; and 4) any wilfulness or bad faith by the party seeking modification.  Here Buckley did have all of the evidence upon which he wished to rely to show retaliation before the pre-trial order was entered, the issue was raised in his Complaint, it was not raised as an objection to the pre-trial order.  Buckley is *pro se* so it would not seem that he acted in bad faith.  The real problem is that any retaliation claim would substantially expand the case and require jury consideration of Buckley's whole history as an inmate in order to understand his claim that circumstantial evidence supports an inference of motive to retaliate in the first place.  To fully explore Buckley's entire history with the prison system and all of his past grievances would unduly prolong the trial without adding anything to Buckley's First and Eighth Amendment claims.  *See Galdamez*, 415 F.3d at 1020.

[5/] Buckley is proceeding *pro se*, his pleadings must be liberally construed.  Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely given.  No request to amend has been made, however, and trial has begun.  The time to add new claims has passed.

That said, it appears from the opening statements that the parties agree that all of the relevant incidents took place in 2001 at High Desert State Prison where Buckley is or was an inmate, and each of the defendants was a correctional officer.  They further agree that in May of 2001 there was a riot between Afro-American and other inmates.  That the unit on which Buckley was housed was typically supervised by three guards.  The guards served in shifts.  Two guards would patrol the floor and the corridors upon which the tiers of cells were found, and one guard would occupy a glassed-in control booth allowing observation of the facility and its common areas.  That in June 2001 at approximately 3:00 p.m. in the afternoon, three guards assigned to Mr. Buckley's living unit were attacked by prisoners, and a female guard—Fobes—was seriously injured.  That Buckley had previously filed a grievance against that officer. [6/]  It is undisputed that significant tension existed in the units after the attack [7/]  In any event, Buckley and his cellmate were removed from their cell and transferred to Administrative Segregation ("Ad Seg ").  Buckley alleges that he was wrongfully classified as "management control" and  placed in a cell reserved for mentally ill inmates who were out of control and that the cell was contaminated by feces and urine.  He also complains that he was in poor health, was left naked in the cell, denied water, and served unappetizing and not nutritious food.  Buckley

---

[6/] In pre-trial filings Defendants argue that Buckley witnessed but did not participate in the attack.  It is unclear about the sequence of events, but at some point Defendants argued that Buckley was overheard to state that Fobes was a racist and got what she deserved.  During trial defendants testified that Lt. Perez was in charge during the first shift which did not begin until 10:00 p.m. and he arrived at the prison after the events involving the guard who was attacked.  He was briefed by correctional officers on duty who told him that as a result of the attack the inmates were locked down, *i.e.* confined to their cells and that a number of the inmates were screaming abuse at the guards from their cells and generally engaging in incitement, which, in context, meant keeping tensions high.  It is the defendants' position that unidentified staff informed Perez of this and identified (in some way) Buckley as among those engaged in incitement.  Perez brought this to the attention of Captain Briddle who told him to "lock them up."  Briddle says he told Perez to lock up the troublemakers whoever they were but did not mention Buckley by name.  Perez then issued lock down orders as to each of the inmates identified to him as engaging in incitement, and those inmates were transferred to Ad Seg.  Buckley and his cell mate, now deceased, were included in a group of eight to ten inmates transferred to Ad Seg.

[7/] The parties disagree as to whether it was only the guards who were tense and whether the tension extended to the inmate population.  It appeared at trial undisputed that on the night of June 10 and the early morning of June 11 inmates were  locked down in their cells and at least some were screaming.

ORDER
*Buckley v. Evans*, No. 2:02-01451-JKS                    5

does not seem to argue that the manner of his extraction from the cell was inappropriate if the facts were as the defendants contend.  He concedes that he followed instructions prior to his removal from the cell.  He does contend that he was placed in handcuffs and leg irons, and that his complaint that the handcuffs were too tight were ignored.  There is a dispute regarding how long Buckley was in shackles prior to being placed in a cell in Ad Seg.  Buckley says many hours, the defendants argue less than two hours.  Buckley's main complaint is that one of the guards—Perez—filed a false report accusing Buckley, in effect, of incitement to riot and that all of Buckley's mistreatment flowed from that falsehood.  In other words, Buckley seems to argue that any force used to extract him from the cell would have been excessive because unnecessary. He also contends that the correctional officials all knew that the report was false and that there was no justification to put him in Ad Seg at all.  Finally, he contends that the review committee knew he was "innocent" of incitement to riot, but kept him on Ad Seg anyway.  Finally, the parties agree that at least some of  Buckley's materials were seized but disagree about the circumstances and the duration of the seizure.[8]

## RETALIATION

Current federal law  requires prisoners who wish to complain of the conditions of their confinement in federal court to exhaust prison remedies by fully utilizing the prison grievance

---

[8] Buckley complains of two incidents one in September of 2001 and one in November of 2001. On one occasion Buckley left a manila envelope containing some papers in an out of bounds area.  An officer in an observation area spotted the envelope and directed an officer within the building to exit and retrieve the envelope.  He did so, took it inside and searched it.  Buckley contends that he had already searched it in the yard.  The envelope was returned to Buckley but he contends a religious book and some legal papers were missing.  He claims these items were seized.  The second incident involves religous material mailed to Buckley which were held at the mail room because the address label was hand printed and not pre-printed in violation of a rule.  The mail room personnel in conformity with regulations searched the package and determined that it contained a religious book.  Violation of the pre-printed address label rule gave an inmate some options to have the book destroyed, returned to the sender and resent in conformity with the rule.  Buckley was informed of these options but he contends not within the time limits in which he could have exercised them.  Defendants concede that such items are only required to be held for thirty days but argue that in fact items are kept much longer and Buckley's book may be still in storage.  Buckley grieved every one of his claims, exhaustion is not contested.  It does not appear that during the grievance procedure the items were located and a reasonable resolution of the dispute made.

procedures before filing suit in federal court.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S.___, 126 S.Ct. 2378 (2006).  A prisoner who is retaliated against for utilizing such procedures and for exercising his First Amendment right to freedom of speech may sue any retaliator who acted under color of law for damages unless the retaliatory action could be shown to advance legitimate penological goals.  *See, e.g., Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  Buckley's claim is that he was subjected to Ad Seg and the forceful removal from his cell without cause, *i.e.* based on non-existent or perjured evidence, which could not serve a penological purpose.  In his remarks to the Court and in his opening statement, Buckley referred to the actions of Briddle and Perez as retaliation, but no retaliation claim was preserved in the pre-trial order and Buckley did not mention a separate retaliation claim in his objections to that pre-trial order.[9]  There is therefore no separate retaliation claim in this case.[10]

---

[9] It is true that Buckley in his *pro se* pleadings and his remarks throughout the trial identifies himself as someone who has frequently filed grievances against prison officials at the various prisons where he has been housed during the past seven years.  Buckley referred at various times, outside the presence of the jury, to at least three trials in federal district court.  In his pleadings, Buckley attributed his initial transfer to High Desert State Prison to retaliation for earlier grievances he had filed and complained of continuous harassment after his arrival based upon his history as an aggressive litigator.  Buckley does, in his pleadings, contend that his treatment after June 1, 2001, was retaliation for his earlier grievances, and particularly his grievance against officer Fobes whose injuries from an inmate attack prompted the prison's actions which form the basis for Buckley's various claims.  It is the pre-trial order, not the pleadings, that govern the issues properly presented to the jury at trial.  It is instructive that Buckley's objections to the pre-trial order did not mention a distinct claim for "retaliation" or a distinct claim for "procedural due process at the review hearing."

[10] It may be that the problem here is semantic.  It is undisputed that Buckley on behalf of himself and other inmates filed a grievance against officer Fobes in May, and that officer Fobes was seriously injured in an attack by inmates on June 10.  Buckley is convinced that he was singled out for "punishment" because of the grievance he filed against Fobes.  Buckley may be using the term retaliation to only  convey the idea that, in his view,  neither Perez nor Briddle had any evidence upon which to issue a lock down order and subject Buckley to removal from his cell and a transfer to Ad Seg. In Buckley's view, their actions were intended to punish him for filing the grievance.  These claims are preserved as part of Buckley's Eighth Amendment claim.  If the jury believes that Perez and Briddle acted in bad faith and maliciously, i.e. based upon animosity to Buckley and not on "some evidence" that he had engaged in incitement,  he will have proved a number of the elements of his claims.   It is a separate claim for retaliation that was not preserved in the pre-trial order.

DUE PROCESS IN PRISON DISCIPLINARY PROCEEDINGS

A prisoner aggrieved by the procedures followed in a disciplinary proceeding may sue the participants for damages under 42 U.S.C. § 1983 claiming that he was denied due process to which he was entitled under the Fourteenth Amendment.  He need not seek habeas corpus first. *See e.g. Ramirez v. Galaza,* 334 F.3d 850 (9th Cir. 2003).  Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, a statement of the evidence relied on by the prison officials, and the reasons for the disciplinary action.  *Wolff v. McDonnell*, 418 U.S. 539 (1974).  Due process does not require that an informant's identity be revealed to an inmate.[11/]  *Wolff*, 418 U.S. at 568-69.  Findings that result in any loss of liberty will satisfy due process if there is "some evidence" which supports the decisions of the disciplinary board.  *Superintendent v. Hill*, 472 U.S. 445 (1985).  For purposes of this case we may assume that any separation from the general prison population that results in administrative segregation constitutes some loss of liberty.  *Compare Hewitt v. Helms*, 459 U.S. 460 (1983) (state statutory framework and punitive nature of segregation can create liberty interest); *accord Ramirez*, 334 F.3d at 860; *but see Sandin v. Conner,* 515 U.S. 472 (1995) (claim based upon Ad Seg is only cognizable if it imposes some "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

The evidence is in dispute regarding the quality of life in Ad Seg at High Desert Prison. Since, as will be shown, this claim was not preserved, it is not necessary to determine whether Ad Seg at High Desert qualifies under *Sandin* as atypical and a significant hardship.

---

[11/] The quote refers to disclosure of the name of confidential informants, typically prisoners who risk being identified as "snitches" and subject to retaliation.  The defense witnesses were in agreement that there is no need to conceal the name of a staff witness.  Buckley believes that the failure to identify the staff member should lead to the conclusion that there was no staff member, that no one saw him engaging in incitement, and that Captain Briddle simply ordered Lt. Perez to segregate Buckley to punish him for filing a grievance against Fobes.  Defendants offer a different explanation.  They explained the delay in this case by the fact that the men and women providing security on the night of June 10 and the morning of June 11 were unfamiliar with the area that housed Buckley and did not know the inmates by sight.  These officers replaced the correctional officers injured on June 10 who were familiar with the housing unit and its inmates.  The implication was that staff observed inmates engaging in incitement but were initially unable to identify those responsible and needed time to identify them.  Ultimately no one was able to identify Buckley, and so, after forty days in Ad Seg, he was released.  Whether, under the facts, this is a plausible explanation for the delay in bringing forth charges is for the jury.

What is troubling is that in this case the informants whose statements caused Buckley's segregation were allegedly staff members whose identity could easily have been disclosed without endangering any inmates.  No one seems to know which staff members identified Buckley as an instigator.  The Court recognizes that inmates may be removed from the general population and segregated while an investigation takes place, and that a "some evidence" rule applies to the investigatory period as well as to the ultimate decision whether to impose sanctions.  However, permitting an Ad Seg placement for forty days to rest on rumor and innuendo would be suspect, particularly since rumors may center on institutional gad flies whose "offense" is troubling administration with constant grievances and law suites.[12]

Here, however, Buckley's preserved claim is not a separate claim that he was denied procedural due process because he was segregated without some evidence that he was inciting a riot, but the complementary claim that the absence of evidence justifying his placement and retention in Ad Seg establishes the responsible official's bad faith for purposes of his Eighth Amendment claim and associated request for punitive damages.  Buckley may rely upon that evidence for those purposes, but the Court will not instruct on a separate due process claim.

## RULINGS ON EVIDENCE

In any trial there is a risk that in McCormick's phrase, "the sideshow will swallow up the circus."[13]  The trial court's weapons to prevent this are the Federal Rule of Evidence 403, which provides in essence that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence and

---

[12] Under the law of the U.S. Supreme Court and the Ninth Circuit, if staff members did see Buckley engaging in incitement and reported their observations and they were named in the lock down order, this issue would disappear given the circumstances.  Failure to identify the staff members lends credence to Buckley's fear that no staff member observed him doing anything, and the report was a fabrication.

[13] That is that side issues of only tangential relevance will take up inordinate time and divert the jury from the real issues in the case.

ORDER
*Buckley v. Evans*, No. 2:02-01451-JKS                               9

Rule 611(a), which provides that the court must exercise reasonable control over the mode and order of interrogation to avoid, *inter alia,* needless consumption of time.

In context, unfair prejudice means evidence that though relevant might lead a jury to ignore the facts and the law and decide a case on an emotional basis or for an improper reason. *See, e.g.*, *Old Chief v. United States*, 519 U.S. 172, 180 (1997);  *United States v. Gonzalez-Flores,* 418 F.3d 1093, 1098 (9th Cir. 2005); *United States v. Ellis*, 147 F.3d 1131, 1134-36 (9th Cir. 1998).  Generally, questions of unfair prejudice are addressed by timely pre-trial motions *in limine* and as part of Rule 16 pre-trial procedures.  At trial Rule 403 is primarily invoked to avoid waste of time , confusion of the issues and needless presentation of cumulative evidence.  While bias and credibility are important issues in any case, the court may, in a proper case, exclude on Rule 403 grounds cross-examination and extrinsic evidence offered to show that a witness is biased.  *See, e.g., United States v. Larson,* ___ F.3d ___, 2007 WL 2192256 (9th Cir. August 1, 2007) (en banc) (in evaluating Rule 403 exclusion of such evidence the court should determine: 1) whether the excluded evidence was relevant; 2) whether other legitimate interests outweigh a party's interest in presenting the evidence, i.e. balancing probative value against the Rule 403 factors; and 3) whether exclusion of the evidence left the jury with sufficient information to assess the credibility of the witness).[14/]

1. <u>The Green Wall.</u>  Buckley sought to question one of the defendants,  Dr. Ferrant, who at all relevant times was a state employed psychologist, about what he termed the "Green Wall," a phrase used by witnesses before the state legislature to describe a code of silence allegedly adopted by members of a union representing prison guards to protect members—rogue correctional officers—who brutalized and mistreated inmates in the California state prison system.[15/]  Buckley apparently hoped that Dr. Ferrant would testify to what she had heard and

---

[14/]  The cases cited turn on limits on cross-examination.  In this case Buckley called all of the Defendants as adverse witnesses.  No non-party testified.  The Court is treating Buckley's examination of the Defendants as adverse witnesses as cross-examination for purposes of evaluating limitations on examination for bias under Rule 403. *See* Fed. R. Evid. 611(c).

[15/] Ferrant is a party to this case.  She has a Ph.D in psychology and was hired to provide mental health treatment and assistance to inmates.  She testified as a fact witness.  No one sought to qualify her as an expert on the psychology of prison guards or their organizations.  *Compare United States v.*

read in the newspapers and this evidence would support Buckley's theory that the Defendants in this case had closed ranks against him and were perjuring themselves in order to defeat his claims.  The objection was to relevance, the Court concluded that the evidence had minimal probative value and any such value was substantially outweighed by the prudential considerations found in Rule 403.   The evidence would not address any element of any claim or defense.  Buckley hoped to use it as an indirect means of attacking the credibility of the defense witnesses.  Since it did not directly address the merits, *i.e.* an element of a claim or defense, the probative value of the evidence was weak.  *See, e.g., United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (the probative value of evidence against a defendant is low where the evidence does not go to an element of the charge).  Apparently, the probative value would require the following sequence of inferences, what Dr. Ferrant heard as gossip and read in the newspapers about a prison guard code of silence and the unwillingness of prison administrators to overcome it was true.  What was true of other guards at other prisons and the wardens of those prisons would also be true of the Defendants in this case.  That therefore the jury should infer that a code of silence was operational here and make credibility and bias determinations accordingly.  Against this strained probative value, we would have the delay and confusion attendant on a full exploration of these other cases and other people.  Each of the witnesses is a defendant with a clear interest in the outcome of the case  whose bias is obvious.[16]   As to the other Defendants,  Ferrant's testimony would be extrinsic evidence.  While her own bias was a legitimate area of inquiry, there was no foundation laid to show she was susceptible to a "Green Wall."  She was no longer a state employee at the time she testified.  Buckley is free to argue based upon the evidence in the case that the Defendants are not being truthful in denying his claims.  The Court will not permit evidence about the "Green Wall." FED. R. EVID. 403. *United States v. Smith,* 196 F.3d 1034, 1037-39 (9th Cir. 1999).

---

*Hankey*, 203 F.3d 1160 (9th Cir. 2000) (discussing expert testimony regarding gang membership and *inter alia* a code of silence among gang members) *see also United States v. Abel*, 469 U.S. 45, 52 (1984).

[16] In context, bias means nothing more than to favor one side over the other.  Clearly, a named party has obvious reasons to favor himself or herself over someone seeking to collect damages from them.  In such a case bias collapses into "interest" which means a showing that the witness might be affected favorably or unfavorably by the outcome, *i.e.* the jury's verdict.

2. <u>Buckley's initial classification</u>.  Buckley also wanted to interrogate warden Evans about an issue that arose when Buckley was transferred to High Desert Prison.  It appears that Buckley felt that he was improperly classified and, as a result, lost privileges.  He sought intervention from Warden Evans and was rebuffed.  Ultimately, Buckley contends he went over Evan's head and was successful.  Buckley seems to recognize that this evidence would not be relevant to any claim or defense in this action.  He seems to want to use it to show that Evans is biased and committed to always backing his officers against an inmate no matter what the justice of a case.  Essentially, he wishes the jury to infer that the decision in Buckley's favor was the correct one, that earlier adverse decisions were therefore erroneous, that the jury should infer malice and ill will from any erroneous decision, and therefore view Evans' testimony with distrust.  Again, the probative value of this evidence on the issue of bias is weak, and a full evaluation of the classification issue would unduly prolong the trial and confuse the issues.  These considerations substantially outweigh the minimal probative value where Evans is a party sued for damages whose bias is obvious.  *See United States v. James*, 139 F.3d 709, 712-15 (9th Cir. 1998) (affirming exclusion of evidence sought to show racial bias on the part of a government witness where the evidence was remote in time, the probative value week and the risk of confusion of issues significant).  The Court therefore excluded evidence regarding Buckley's initial classification.[17]

3. <u>The Best Evidence Rule</u>.  Buckley exhausted all of his claims by pursuing them through various stages of agency review.  In the course those appeals, Buckley attached various

---

[17]  In a hierarchical system it is not unusual that a superior will overrule an inferior.  The Ninth Circuit reverses district court decisions all the time.  Often this shows no more than a difference of opinion about what the law means in a new context.  Occasionally, it shows that the lower court overlooked controlling precedent.  But honest disagreement or even innocent error or negligence does not tend to establish malice or intent to discriminate.  *See, e.g., McSherry v. City of Long Beach*, 423 F.3d 1015, 1023-24 (9th Cir. 2005) (discussing circumstances under which a reversal on appeal should lead to reassignment of the case on remand).  Without more, evidence that a superior rejected an inmate complaint against a member of staff and was ultimately overruled and a decision favorable to the inmate entered does not show that the decision maker whose decision was rejected is biased or prejudiced or malicious.  Consequently, such weak probative value would not justify a full airing of the classification dispute before the jury.  This is particularly true where a full airing of the classification decision would put Buckley's criminal history and institutional history before the jury.

documents to his memoranda.  Defendants copied those documents, and both parties have offered copies as evidence.  Generally, when the contents of a writing are in issue, the original must be produced.  FED. R. EVID. 1002.  Duplicates (counterparts) may be admitted in the absence of an original in the absence of any concerns about authenticity and under the circumstances it would not be unfair to admit the duplicate. *See* Rule 1003.  Here we are dealing with photocopies, which the rules treat as counterparts.

 In an appropriate case other evidence of the contents of a writing may be received unless the original was lost or destroyed in bad faith.  *See* Rule 1004.  The originals in this case were originally in the custody and control of the prison.  They should have been preserved. Particularly, as to some of the potential counterparts, there were concerns about authenticity. Ultimately, the parties agreed not to offer the disputed copies, and those copies admitted were admitted without objection.  These issues are therefore moot.

4.  <u>Prior consistent statements</u>.  Buckley wished to introduce copies of his various pleadings and appeals at the agency level.  Those documents would be admissible to show exhaustion of remedies, but exhaustion is decided by the Court not the jury and exhaustion was conceded. *See* Rule 104 (preliminary questions).[18/]  The Court need not admit evidence on issues that are conceded. FED. R. CIV. P. 403.

It appears that Buckley wishes to use his prior written statements contained in his appeals and grievances in lieu of oral testimony and to bolster his own credibility.  For such purposes, his prior statements would be inadmissible hearsay. *See* FED. R. EVID. 801(c) (hearsay is a statement, other than one made by a declarant while testifying at the trial . . . offered to prove the truth of the matter asserted).  Thus, if statements, written or oral, made outside of trial are offered by the

---

[18/]  Exhaustion is a question solely for the court.  Buckley is concerned that this Court's ruling violates Rule 104(e) which provides that Rule 104 does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility.  That provision addresses cases where a preliminary fact must be found in order to admit evidence and the court finds the preliminary fact and admits the evidence for consideration by the jury.  In such a case a party is still free to admit evidence to contest the credibility or the weight of the admitted evidence.  Here exhaustion is conceded, and so even if someone could contest the weight or credibility of evidence establishing exhaustion, this would not be such a case. The real issue here is not exhaustion but a party's use of evidence to show prior consistent statements. That issue is addressed in the text of this Order.

person making the statements they will be rejected on hearsay grounds.  Of course, where the statements are made by a party and they are offered "against" the party, they may be admissible as "admissions."  Rule 801(d)(2).

A party may introduce evidence of prior "inconsistent" statements for purposes of impeachment.  FED. R. EVID.  613, 801(d)(1).  Federal Rule of Evidence 801(d)(1) does provide that: Prior consistent statements of a witness may be offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."   It is possible that copies of prior pleadings could be admissible to show prior consistent statements, but such evidence may only be admitted where there is a claim that the position taken by a party was a "recent" fabrication.  Here Defendants do contend that Buckley's claims are fabricated, but not that the fabrication is recent.  It is undisputed that all of Buckley's claims were presented to the agency in a timely manner and exhausted.  Buckley's appeals and grievances regarding these issues came after, not before, Buckley would have a motive to fabricate.  *See* the discussion of this issue in *United States v. Collicott*, 92 F.3d 973 (9th Cir. 1996) and *see United States v. Ellis*, 147 F.3d 1131 (9th Cir. 1998).  Under these circumstances there is no recent fabrication claim, and a party is not permitted to show evidence of prior consistent statements.

5.  Admission of Interrogatories submitted to a party and the answers given.

Federal Rule of Civil Procedure 33 governs interrogatories served on parties.  Rule 33(c) currently provides in relevant part that "answers [to interrogatories] may be used to the extent permitted by the rules of evidence."  At trial Buckley asked questions of some of the Defendants based upon their answers to interrogatories, and their answers are in the record.  The jury was instructed that "Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand." Instruction No. 20.

There does not seem to be any controversy about the interrogatory answers disclosed to the jury during the oral testimony of the Defendants.  At the close of the evidence Buckley sought to introduce the written interrogatories, answers, and objections in the form he received them

from the Defendants.[19/]  The admissibility of this evidence turns on the extent to which it 1) constitutes answers and 2)  is "permitted by the rules of evidence."  At the outset it is clear that questions and objections are not evidence and would not be admitted.[20/]  Questions may be considered by the jury only as they give meaning to the answers. *See* Instruction No. 16.

The answers must be relevant, Federal Rule of Evidence 401, and not violate any of the rules of auxiliary policy set out in Rule 403 and if Relevant  may be admissible as "admissions." FED. R. EVID. 801 (d)(2).  They may also be used to impeach by showing prior inconsistent statements. *See* Rule 613(a) and (b)

In this case, Buckley sought to introduce the entirety of the written interrogatories.  Since the objections were not admissible, they would need to be excised.  Each question and answer would need to be evaluated for relevance.  Buckley did not seek leave of court to read specific questions and answers into the record which would be the normal procedure for presenting admissions contained in discovery materials to the jury.  The Court skimmed through the answers and expressed concern that they were cumulative of evidence in the record.  The Court in an admittedly cursory review of the interrogatories and the answers saw no glaring inconsistencies between the answers and the witnesses' testimony.  In response to the Court's inquiry, Buckley indicated that the only inconsistency he noted was that Warden Evans indicated that the prison was in a lock down status at one time and denied it at another.  While Buckley could certainly have read that question and answer to the jury as part of his case-in-chief, or perhaps in rebuttal, he did not request permission to do so.[21/]  On balance, after considering Buckley's proffer and

---

[19/] While testimony by a party at her deposition, in affidavit form, in written statements, and in answers she gives to interrogatories may be admissible as "admissions," the preferable practice is not to send the written transcripts, statements or interrogatories to the jury room but to have the moving party read them into the record.  This avoids emphasizing such "testimony" at the expense of oral testimony for which the jury would not have a transcript.  It also enables the court to limit the introduced evidence to that which is relevant avoiding extraneous materials.

[20/] As the jury was instructed, questions are only important in giving meaning to answers.

[21/]  Generally the plaintiff puts on his evidence as part of his case-in-chief and may only offer evidence in rebuttal that addresses matters that were not addressed in the plaintiff's case-in-chief but were first raised in the defense case.  If the plaintiff knows that an issue will arise, he must address it in his case-in-chief.  In this case all of the defendants—including Warden Evans—testified as adverse witnesses as part of Buckley's.  The defense only called one witness, Warden Evans.  The case-in-chief

concluding that the only interrogatory answer identified by Buckley was not clearly inconsistent[22] and was probably cumulative of other testimony in the record, the Court exercised its discretion under Rules 403 and 611(a) and excluded the written interrogatories, objections and answers as either irrelevant or, if relevant, cumulative.[23]

## MOTIONS FOR JUDGMENT AS A MATTER OF LAW, RULE 50

The Defendants made a number of motions for judgment as a matter of law.  Since the jury returned a verdict in favor of all Defendants, those motions will only be briefly addressed in this Order.  A party wishing to challenge the sufficiency of the evidence must make a motion for judgment pursuant to Federal Rule of Civil Procedure 50(a) after the opposing party has had an opportunity to present evidence, *Unitherm Food Systems, Inc. V. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006), and if it wishes to pursue the matter on appeal must renew the motion after an

---

lock down status of the prison and its duration were addressed fully during Evans' initial testimony and in passing during his testimony as part of the defense case.  The Court recognizes that Buckley is proceeding *pro se.* If he had pointed to answers to interrogatories that were material to one of his claims, the Court would have overlooked the inadmissibility of the written questions, answers and objections and discussed with Buckley how he could get material answers to interrogatories into evidence.  Here the only specific interrogatory answer to which Buckley directed the Court's attention appeared cumulative.

[22] The Court must scrutinize prior statements for inconsistency to assure that impeachment is proper.  *See United States v. Higa*, 55 F.3d 448 (9th Cir. 1995).  Prior statements of a party opponent need not be inconsistent to be admitted as "admissions" so long as they go to a material fact in issue.  Where, however, prior party statements are consistent with their oral testimony the question whether the evidence is cumulative arises.  That was the problem here.  It was not clear to the Court that any uncertainty Evans displayed regarding when the prison was in lock down status and for how long was material to an issue in this case.  It was thus arguably "collateral" and inappropriate for impeachment by extrinsic evidence. *See United States v. Higa,* 55 F.3d 448, 452-54 (9th Cir. 1995).

[23] In its objections to the written interrogatory questions, answers and objections, Defendants also objected that they had not been shown the interrogatory answers Buckley contends was inconsistent with their oral testimony and given an opportunity to explain. *See* FED. R. EVID. 613.  Since the Defendants were parties and any prior written or oral statements were arguably admissions, they would not be entitled to an opportunity to explain inconsistencies before extrinsic evidence in the form of the written answers and questions were admitted. *See* Rule 613(b)("this provision [requiring an opportunity to explain before extrinsic evidence of inconsistency is admitted] does not apply to admissions of a party opponent as defined in rule 801(d)(2).  Of course, if a party was truly "ambushed" by an unexpected use of interrogatory answers as admissions offered for the first time by the plaintiff in rebuttal, the Court would have discretion to allow the defendants "surrebuttal" to address the new matter.

adverse verdict.  Rule 50(b).  The district court presented with a Rule 50 motion must apply the same standard or test it applies in reviewing a motion for summary judgment.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-52 (2000).  The Court must consider the whole record but must draw all reasonable inferences in favor of the party against whom the motion is made and may not weigh the evidence or evaluate credibility, *i.e.* the court while considering the whole record must disregard all evidence favorable to the moving party which is controverted.  *Ibid*.  Finally, where the plaintiff is *pro se,* the court may not grant a motion for judgment without assuring that  the moving party set out in detail the law and the facts upon which the motion depends, and the court must determine if there are deficiencies in the plaintiff's proof and advise the plaintiff of those deficiencies and ways to remedy any defects.  *See Waters v. Young*, 100 F.3d 1437 (9th Cir. 1996).[24]

    1. <u>Excessive Force Claim against Capt. Jeff Briddle and Lt. Tim Perez.</u>

    In order to prevail on an Eighth Amendment claim of excessive force, a plaintiff must prove three elements: 1) the use of force which was excessive and unnecessary under all the circumstances; 2) the defendants acted maliciously and sadistically for the purpose of causing harm; and 3) the acts of defendant caused harm to the plaintiff.  The testimony of Buckley contradicted that of these Defendants on these elements.  It appears that Defendants concede that Buckley has made a *prima facie* case on elements 1 and 2.   Defendants base their motion on the third element, contending that Buckley only complains that his handcuffs and leg irons were put on too tight and not loosened when he complained.  Defendants argue that tight handcuffs and leg irons cannot establish more than *de minimis* force as a matter of law.  The Supreme Court has held that an inmate bringing an Eighth Amendment excessive force claim need not show severe injury.  *Hudson v. McMillian*, 503 U.S. 1 (1992).  It is true that the court did say that not every maliciously motivated push or shove constitutes cruel and unusual punishment and in that

---

[24]  The question of qualified immunity is not mentioned in the pre-trial order.  Typically qualified immunity is considered a preliminary issue to be addressed pre-trial. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993).  Failure to raise the issue pre-trial or have it included in the pre-trial order would preclude the court from considering it absent a motion to amend the pre-trial order.

context concluded that "*de minimis* uses of physical force that is not of a sort that is repugnant to the conscience of mankind" would not satisfy the third element above.

A Fourth Amendment claim of excessive force in the context of an arrest and stop as described in *Graham v. Connor*, 490 U.S. 386 (1989) is very similar to an Eighth Amendment claim as discussed in *Hudson*, *supra*.  Some courts considering such a Fourth Amendment claim have considered claims that tight handcuffs constituted excessive force where pleas to loosen the cuffs are ignored.  *See Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322-24 (9th Cir. 1995).  Here, if Buckley is to be believed, he constantly complained that the handcuffs and leg irons were too tight, and he was kept in handcuffs and leg irons for almost five hours.  Under these circumstances, it appears that a jury could find more than *de minimis* force particularly where Buckley's testimony if believed might permit an inference that there was no proof of a necessity for any force.

2.  Eighth Amendment prison conditions claim against Lt. Mike Wright.

Defendants argue that there is no evidence that Lt. Wright ever visited the cell in which Buckley was housed.  Where prison conditions rather than excessive force are the focus o f an Eighth Amendment claim, the test shifts from malicious actions intending to cause pain absent a penological justification to conscious indifference to a substantial risk to the inmate's health or safety.  Construing the record most favorably to Buckley, he was placed in an unsanitary cell for over ten days during which officers under Wright's direct supervision who reported to him visited the cell at least five times per day.  Assuming the cell was in the condition described by Buckley, a jury could infer that Wright, in fact, knew of the condition and consciously disregarded it.  A jury could also conclude based upon the testimony of all the witnesses that if such a condition existed it would have endangered the health of an inmate kept in the cell for the length of time Buckley was in the cell.[25]

---

[25]  The test is neither negligence, would a reasonably prudent supervisor in the exercise of ordinary care have discovered and avoided the risk or civil recklessness, was the problem so obvious that anyone, reasonably prudent or not, have recognized it.  On the other hand, there is no way to look into another person's mind and directly access their mental state.  Necessarily, knowledge must be proved by circumstantial evidence.  Thus if a jury is convinced that a reasonably prudent person would have appreciated the risk and acted upon it, and are further convinced that the defendant is a reasonably

3. Eighth Amendment claim against the review committee.

Defendants argue that Dr. Ferrant was a psychologist who served, in substitution for another psychologist, as a consultant to the committee and had no voting authority.  Thus, Defendants argue she could not have disregarded a known risk of harm to Buckley, even if as Buckley testified, she was present when Buckley described the conditions of his cell on June 21. This is a close question.  Ferrant testified that Buckley made no such claims.  Nevertheless, she did testify that, if he had, she would have felt required to compile notes and share them with the psychology department which would have prompted an investigation.  She did not make such a report.  Whether a jury, which believed Buckley's testimony,  could have inferred from this that Ferrant had the power to aid Buckley and consciously omitted her aid and thereby knowingly cooperated in subjecting him to continued detention in conditions dangerous to  health and safety is sufficiently close that it invokes questions of qualified immunity.  The jury decision absolving Ferrant along with the other Defendants moots this question.

4. First Amendment Claim against Office Assistant Anne Reed and Capt. Al Stone.

Defendants Reed and Stone move for judgment.  They argue that Reed is a mailroom clerk, and that Stone is an administrator in charge of the mailroom.  Construed most favorably to the Plaintiff, the evidence shows that Buckley received a package that was hand addressed.  A rule of general application precludes delivery of packages that are hand addressed.  Such packages must bear a pre-printed address label.  When Buckley's package arrived, Reed noted the violation and in conformity with regulations searched the package, found no contraband, and then retained the package.  She then filled out a form notifying Buckley of the retention and informed him of certain available alternatives.  The form provided that Buckley would have to respond within 15 days.  It was not immediately delivered to Buckley, however, but sent to Capt. Stone for his approval.  Stone approved it and the notice was sent.  It appears that Buckley was moved from location to location within the prison at about this time.  There is a sharp dispute between Buckley and the Defendants regarding when Buckley received the notice.  Buckley argues that the package was mailed to him by a religious organization and contained religious

---

prudent person, it may, but is not compelled to, find that the defendant knew and appreciated the risk.

ORDER
*Buckley v. Evans*, No. 2:02-01451-JKS                           19

materials.  Buckley argues that the retention of his package imposed a substantial burden on his religion.

In bringing their motion, Reed and Stone argue that they acted in reasonable reliance on a regulation of general application imposed to advance a legitimate penological goal, namely to reduce the introduction of contraband into the institution.  *Turner v. Safley*, 482 U.S. 78 (1987).

Whether the prison violated Buckley's First Amendment rights is a mixed question of fact and law. *Stefanow v. McFadden*, 103 F.3d 1466, 1471 (9th Cir. 1996).  Our consideration is informed by the Religious Land Use and Institutionalized Persons Act (RLUIPA) which provides in relevant part that "[n]o government shall impose a substantial burden on the religious exercise of a person residing or confined in an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers " a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2); *Warsoldier v. Woodford,* 418 F.3d 989 (9th Cir. 2005).[26/]  Therefore, Buckley had the initial burden to establish that the actions of Reed and Stone placed a substantial burden on his exercise of his religion, and if he made a *prima facie* case, the burden would shift to the Defendants to prove that the regulation 1) served a compelling governmental interest and 2) accomplished that interest by the least restrictive alternative.  The Defendants did not preserve in the pre-trial order the contention that the regulation in question met the RLUIPA test and therefore the Court did not instruct on the Defendants' burden.  The jury was merely told that if Buckley sustained his burden of proving that the conduct of Reed and Stone placed a substantial burden on Buckley's religion, Buckley won.  *See* Instruction No. 10.  Given the pre-trial orders listing of contested facts and the controlling law, Defendants cannot defend on the theory that the regulation satisfies RLUIPA.  Their case must rise or fall on persuading the jury that Buckley's religious rights were not substantially burdened.  Given the evidence reasonable people could differ as to whether Reed and Stone's manner of complying with the regulation substantially burdened Buckley's

---

[26/]  The effective date of this statute was September 22, 2000.  The events in this case took place in 2001.

religious rights.  The jury ultimately found in Defendants' favor on this issue making the matter moot.

IT IS SO ORDERED.

Dated:  September 28, 2007.

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge